**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

| | | |
|---|---|---|
| GLYNN J. SINGLETON, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) ) | CASE NO. 2:12-cv-00216-NBB-SAA |
| WELLS FARGO BANK, N.A.; WELLS FARGO INSURANCE, INC.; QBE INSURANCE CORPORATION; and STERLING NATIONAL INSURANCE AGENCY, INC. (n/k/a QBE FIRST INSURANCE AGENCY, INC.) | ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS WELLS FARGO BANK, N.A.'S AND WELLS FARGO INSURANCE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo Insurance, Inc.

("WFI") (collectively "Defendants") respectfully submit this memorandum of points and

authorities in support of their motion to dismiss plaintiff's complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).

## I.

## INTRODUCTION

Plaintiff obtained a loan secured by a deed of trust. That deed of trust required plaintiff

to maintain insurance on the real property collateral securing her loan. When she failed to

maintain required insurance coverage, Wells Fargo purchased it and charged plaintiff for it as

explicitly permitted under the deed of trust.

Plaintiff admits that Wells Fargo was authorized to purchase and charge her for

replacement insurance. However, she contends that the insurance premium she was charged was

"excessive" for various reasons, including that it incorporated commissions and services that should not have been included in the insurance premium.

Plaintiff's claims should be dismissed for four separate reasons. First, plaintiff's claims are barred by the filed rate doctrine. Under the filed rate doctrine, "any 'filed rate' - that is, a rate approved by the governing regulatory agency-is 'per se reasonable and unassailable in judicial proceedings brought by ratepayers.'" *American Bankers Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1204 (Miss. 2001) (en banc) (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir.1994)). The premium that plaintiff paid for lender-placed insurance was set under rates filed with and approved by the Mississippi Insurance Commissioner. Hence, plaintiff cannot sue alleging that these premiums were excessive no matter the alleged reason. Plaintiff's claims are all based on her premise that the premiums she paid for lender placed insurance were too high. Hence, *all* of plaintiff's claims must be dismissed.

Second, even if plaintiff's claims were not barred by the filed rate doctrine, which they clearly are, the Court should nonetheless exercise its discretion under the primary jurisdiction doctrine to require plaintiff to present her claims to the Mississippi Insurance Commissioner before seeking redress with this Court. The Insurance Commissioner has the required expertise to examine plaintiff's claims that alleged insurance practices at issue were "unfair" or "deceptive." It also has extensive statutory powers to investigate plaintiff's allegations, including ordering hearings on the matter. There is no reason that this Court should pass on plaintiff's claims before the Commissioner has had an opportunity to apply his expertise. Hence, the Court should dismiss this suit or stay it pending review of plaintiff's allegations by the Commissioner.

Third, each of plaintiff's purported claims fails to state a viable claim. Plaintiff's alleged claim under the Real Estate Settlement Procedures Act is based on a provision of RESPA that was not in effect until last month and does not apply in any event. Plaintiff's claim for assumpsit is based on an implied contract theory. Here there is an *actual* contract between plaintiff and Wells Fargo and, hence, no need to imply a contract. Plaintiff's purported claim for unconscionability fails both because unconscionability is a *defense* to the enforcement of a contract, not a claim, and because plaintiff's deed of trust was neither substantively nor procedurally unconscionable. Furthermore, Wells Fargo did not violate the covenant of good faith and fair dealing by purchasing lender-placed insurance to protect the collateral for plaintiff's loan, just as plaintiff's deed of trust permitted it to do. Nor does the implied covenant give rise to wished-for legal duties for which plaintiff did not bargain and that are not in the deed of trust, such as the alleged requirement that Wells Fargo obtain all lender placed insurance through competitive bidding.

Fourth, plaintiff's state law claims are also preempted by the National Bank Act. Wells Fargo is a national bank regulated under the NBA. Regulations promulgated under the NBA expressly permit Wells Fargo to charge borrowers insurance to protect the collateral for their loans. Here, Wells Fargo did nothing more than pass through to plaintiff insurance premium rates that were filed with the Mississippi Insurance Commissioner. Hence, plaintiff's claims constitute a challenge to Wells Fargo's ability to charge plaintiff for insurance to protect the value of its collateral. Accordingly, they are preempted by the NBA.

For these reasons, and all those set forth below, plaintiff's Complaint and all claims therein as to the Wells Defendants should be dismissed.

## II.

## SUMMARY OF FACTUAL ALLEGATIONS

### A.    Plaintiff's Loan and Her Obligation to Maintain Insurance

In March 2008, Plaintiff Glynn Singleton obtained a $74,5000 loan from Bankers Mortgage Center, Inc.[1]  *See* Compl. pp. 27, 30.[2]  Plaintiff's loan was secured by a deed of trust on real property in Desoto County, Mississippi.  *See id* ¶ 38; *id.* pp. 30-45.  Wells Fargo is the servicer of plaintiff's loan.  *See id.* ¶ 38.

Under the deed of trust, plaintiff agreed to maintain property insurance as required by the lender and that, if she failed to do so, the lender could purchase insurance and charge her for it. Compl. ¶¶ 17,65; *id.* p. 35.  Specifically, paragraph 5 of plaintiff's deed of trust, titled "Property Insurance," states:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.

> * * * * * * * * * * * * * * * * * * * * * * * * *

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the

---

[1]  Plaintiff alleges that she obtained her loan from Wells Fargo Home Mortgage.  Compl. ¶ 38.  However, the note and deed of trust that she attaches to her complaint identify Bankers Mortgage Center, Inc. as the lender.  Compl. pp. 27, 30.  Plaintiff apparently concedes that as the servicer of her loan for the lender, Wells Fargo had the right to enforce the deed of trust including those provisions relating to property insurance.

[2]  Plaintiff attached to her complaint the note evidencing her loan from Bankers Mortgage Center, Inc. and the deed of trust securing that loan.  Those documents do not bear page numbers.  Defendants cite to them as part of the complaint and refer to the page number ascribed to them in the Court's docket.

> Property, against any risk, hazard or liability and might provide greater or lesser coverage than what was previously in effect. <u>Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.</u> Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

Compl. p. 35 (emphases added). Under this paragraph, the Lender, and in turn Wells Fargo as servicer, has broad discretion to determine the amount of insurance coverage plaintiff must maintain and is entitled to purchase that coverage if plaintiff fails to do so.

### B.     Wells Fargo Purchases Lender-Placed Insurance For The Property.

When plaintiff obtained her loan in March 2008, she procured flood insurance. *See* Compl. p. 39. In March 2009, Wells Fargo wrote to plaintiff that it had determined that her coverage was less than what Wells Fargo had determined to be the replacement cost value of the property and, hence, was less than required. *See id.* ¶ 41. Wells Fargo stated that if plaintiff failed to obtain required coverage, Wells Fargo would obtain lender-placed coverage with the assistance of WFI. *See id.* ¶ 41.[3] When plaintiff failed to obtain the additional required coverage, Wells Fargo purchased it and charged plaintiff for it. *See id.* ¶¶ 40, 47.

The rate plaintiff paid for her lender-placed policy was filed with and approved by the Mississippi Insurance Commissioner. Wells Fargo purchased plaintiff's lender-placed insurance policy from QBE First. Compl. ¶ 40. In February 2009, QBE submitted to the Mississippi Insurance Commissioner a rate filing for lender-placed insurance. See Ex. A to Defendants' Motion to Dismiss. This filing set forth QBE's rates for lender-placed flood insurance. *See id.* pp. 100-02. The filing also includes an "Actuarial Memorandum" setting forth the reasons why the rates for lender-placed insurance are generally higher than the rates for individually obtained

---

[3] Plaintiff alleges that her insurer wrote Wells Fargo that it had determined that the coverage was at replacement cost value. *See id.* ¶ 41. However, the deed of trust grants the Lender, and by extension Wells Fargo as servicer, the discretion to determine the amount of required coverage. *See id.* p. 35.

coverage. *See id.* pp. 110-11. One such reason given was that "[t]he cost of administering this program is greater than the cost of individually underwritten programs in that *uninsured exposures must be determined* and borrowers and their insurance agents or companies must be contacted to determine the existence of required insurance." *Id.* p. 111 (emphasis added). In its filing, QBE also disclosed the portion of the filed rate attributable to "commission and brokerage expenses." *See id.* pp. 112, 114.

The rate filing was reviewed by six analysts and was approved by the Mississippi Insurance Department effective March 19, 2009. *See id.* p. 1.[4]

### C. Plaintiff's Complaint

Plaintiff concedes, as she must, that Wells Fargo was entitled to purchase lender-placed insurance for her property. *See* Compl. ¶¶ 33, 34. Plaintiff is suing because she asserts that the rate that she paid for lender-placed policy was "exorbitant." *See id.* ¶¶ 19, 20, 32, 47. Plaintiff asserts this is so because the premium she paid incorporated the cost of commissions that QBE paid to WFI, which plaintiff refers to as "kickbacks." *See id.* ¶¶ 18, 23, 24, 25, 26. She also asserts that her premium wrongfully included the costs QBE incurred in tracking and monitoring Wells Fargo-serviced loans to identify lapses in required coverage. *See id.* ¶¶ 27, 28. Notably, plaintiff does not allege that she paid anything more for her policy than the premium charged by QBE. *See* Compl. ¶ 18 (Wells Fargo charged plaintiff "the full cost of the premium.")

### III.
### MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels

---

[4] The actuarial reviewer notes included in the approved rate filing state that "[w]e reviewed the proposed forms and rates/rules and concluded that the program appears reasonable and does not include any abusive features. We have no objection to the filed program." *Id.* p. 7.

and conclusions or a formulaic recitation of the elements of a cause of action are insufficient to state a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Courts should not strain to find inferences favorable to plaintiffs; nor should a court accept conclusory allegations, unwarranted deductions, or legal conclusions. *See, e.g., R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual conclusions are not sufficient to defeat a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

## IV.
## PLAINTIFF'S CLAIMS ARE BARRED BY THE FILED RATE DOCTRINE.

Plaintiff's claims are based on her theory that the premium she paid for lender placed insurance was "excessive" for various reasons. However, the premium plaintiff paid was pursuant to rates that QBE filed with, and that were approved by, the Mississippi Insurance Commissioner. Under the filed rate doctrine, this rate is unassailable. Hence, plaintiff cannot sue because this rate was excessive. *See American Bankers Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1204 (Miss. 2001) (en banc). Accordingly, each of plaintiff's claims is barred by the filed rate doctrine and must be dismissed.

### A.      The Premium Plaintiff Paid Was Set Under Rates Filed With And Approved by the Mississippi Insurance Commissioner.

In Mississippi, insurance is heavily regulated. By statute, insurance "rates shall not be excessive, inadequate, or unfairly discriminatory." Miss. Code § 83-2-3(1)(a). To ensure that rates comply with that mandate, insurers must filed with the Mississippi Insurance Commissioner "all rates, supplementary rate information, policy forms and endorsements…."

7

Miss. Code § 83-2-7(1). The Insurance Commissioner "*shall* disapprove a rate… if the commissioner finds that the rate is unjustified[.]" Miss. Code § 83-2-11(1).[5]

As set forth above, QBE filed its lender-placed insurance rates with the Mississippi Insurance Commissioner. See Ex. A. The filing included the lender-placed flood insurance rates at issue in this case. See Ex. A pp. 100-02. QBE explicitly disclosed in this filing the commission component for its rate. *See id.* pp. 112, 114. QBE also explained that the cost of lender-placed insurance is greater than that for voluntary coverage in part because the insurer must monitor properties to determine "uninsured exposures." *See id.* p. 111. The Mississippi Insurance Commissioner approved these rates effective March 19, 2009. *See id.* p. 1.

## B. The Filed Rate Doctrine Bars Plaintiffs' Claims.

Under the filed rate doctrine, "'any filed rate – that is one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by rate-payers.'" *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2005) (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)); *see American Bankers Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1204 (Miss. 2001)(en banc) (quoting *Wegoland*). Hence, "[w]here the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate....'" *Taffet v. So. Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992) (quoting *Montana-Dakota Utilities Co. v. Nw. Public Serv. Co.*, 341 U.S. 246, 251 (1951)); *see also United Gas Pipeline Co. v. Willmut Gas & Oil Co.*, 97 So.2d 530, 535 (Miss. 1957) (a petitioner "can claim no rate as

---

[5] The Mississippi Code also ensures transparency in filed rates and the approval process. Under the code, "[a]ll rates, supplementary rate information, policy forms, endorsements and any supporting information filed under this chapter shall be open to public inspection at any reasonable time as soon as filed." *See* Miss. Code § 83-2-9(1). The Code further states that "[e]very insurer or rate service organization shall furnish to any insured affected by a rate published by it all pertinent information as to such rate within a reasonable time after receipt of a written request and upon payment of a reasonable charge." *See* Miss. Code § 83-2-13(1).

a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms.")

The filed rate doctrine bars any suit based on an allegation that a rate filed with, and approved by, a regulator is too high or unfair. *See Tex. Commercial Energy,* 413 F.3d at 507 (citing *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986)). Accordingly, the doctrine precludes any suit which would effectively result in the plaintiff paying a rate lower than the filed rate. *See Fla. Mun. Power Agency v. Fla. Power & Light Co*., 64 F.3d 614, 615 (11th Cir. 1995).[6]

The doctrine applies with full force to claims that insurance premiums are excessive. *See, e.g., Richardson v. Standard Guar. Ins. Co.,* 853 A.2d 955, 964 (N.J. Super. Ct. App. Div. 2004) (holding that the filed rate doctrine applies to the insurance industry, and noting "the considerable weight of authority from other jurisdictions that have applied the filed rate doctrine to ratemaking in the insurance industry"); *Schermer v. State Farm Fire & Cas. Co.,* 702 N.W.2d 898, 907 (Minn. Ct. App. 2005) (collecting cases applying the filed rate doctrine to the insurance industry). In particular, the filed rate doctrine applies to claims that insurance premiums are excessive because the insurer has paid kickbacks or otherwise incurred improper expenses that increased the approved rate. *See Morales v. Attorneys' Title Ins. Fund, Inc*., 983 F.Supp. 1418, 1422, 1426 (S.D. Fla. 1997) (dismissing plaintiffs' claims that they paid "grossly overpriced title insurance premiums" because the insurers paid "fees, kickbacks, and/or other things of value" under the filed rate doctrine).

---

[6] The filed rate doctrine applies whether the rate has been set by a state ratemaking authority or a federal one. *See Tex. Commercial Energy*, 413 F.3d at 509 (citing *Wegoland Ltd.*, 27 F.3d at 20).

The Mississippi Supreme Court affirmed this principal in a case strikingly similar to this one. *See American Bankers Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1204 (Miss. 2001) (en banc). In *American Bankers*, the plaintiffs borrowed money from a lender to purchase cars. *See id.* at 1199. The loans required the plaintiffs to maintain insurance and entitled the lender, if plaintiffs failed to do so, to purchase insurance and charge the plaintiffs for it. *See id.* at 1199. After the plaintiffs' insurance was cancelled, the lender procured lender-placed policies from an insurer and charged plaintiffs. *See id.* at 1199. The rate plaintiffs paid was subject to approval by the Mississippi Department of Insurance. *See id.* at 1199.

The plaintiffs sued alleging that the rate they paid was excessive due to collusion between the lender and the insurer and obtained a jury verdict. *Id.* at 1200. The lender and insurer appealed and the Mississippi Supreme Court reversed. In so doing, the court held that any claims based on the alleged excessiveness of the rates plaintiff paid for their lender-placed policies were barred by the filed-rate doctrine. *Id.* at 1204. As the court explained

> The filed rate doctrine is based upon sound considerations of law and judicial policy. A civil juror, who likely has little, if any, expertise in the area of insurance rates and policies, should not be permitted to reject and thereupon impose liability based on the rates of a policy which was expressly approved by the Department of Insurance. *See* Miss. Code. Ann. §§ 83-1-1 et seq. (1999). Permitting a jury to impose liability in such circumstances would result in a judicial infringement upon the duties and responsibilities which are expressly delegated by the Legislature to the Department of Insurance. *Id.*

*See id.* at 1204.[7]

---

[7] *American Bankers* held that the filed rate doctrine barred the plaintiffs' claims to the extent they were based on the rates filed with the Mississippi Insurance Commissioner. *See American Bankers*, 819 So.2d at 1204. However, the court held that some of the plaintiffs' allegations arguably were not based on the rate that they paid but, rather, other conduct by the defendants and that these allegations arguably were not barred by the filed rate doctrine. *See id.* at 1204. The court cautioned the trial court on remand to prevent the jury from imposing any liability based on the filed rates. Here, plaintiff's claims are based on the purported

Plaintiff's claims fall squarely within the ambit of the filed rate doctrine. Plaintiff complains that the premium she paid for lender-placed insurance was "exorbitant," Compl. ¶ 19, "unreasonabl[e]," *id.* ¶ 32, and "excessive," *id.* ¶ 47. But that premium was filed with and approved by the Mississippi Insurance Commissioner. See Ex. A. Hence, plaintiff cannot sue to challenge that rate as "excessive." *See American Bankers*, 819 So.2d at 1204; *Tex. Commercial Energy,* 413 F.3d at 507.

Plaintiff may argue in opposition that she does not challenge the rate she paid, per se, but rather the "kickbacks" QBE paid to Defendants or the tracking services QBE "improperly" performed for Wells Fargo.[8] But plaintiff challenges these practices only because the cost of these practices was "include[d]" in the premiums she paid, rendering them "exorbitant and illegal." Compl. ¶ 28. Again, the premium plaintiff paid was filed with and approved by the Mississippi Insurance Commissioner. Hence, her claims are barred irrespective of why she

"excessiveness" of the rate she paid for lender-placed insurance, Compl. ¶¶ 19, 32, 47, and, hence, they are barred by the filed-rate doctrine. In a transparent attempt to fall within the exception set forth in *American Bankers*, plaintiff includes boilerplate allegations that Defendants "retroactively priced" insurance policies for certain borrowers. Compl. ¶ 31. However, plaintiff does not allege that her policy was "retroactively priced." In any event, as discussed below, several recent decisions have recognized that these "retroactive pricing" in the lender-placed insurance context unjustifiably attack the lender's exercise of its contractual right to ensure that the property securing its loan is continually covered. *See infra* at 23-24.

[8] Plaintiff's additional allegation that Wells Fargo does not seek competitive bids for lender-placed insurance, *see* Compl. ¶ 68(b), does not save her claims from the filed rate doctrine. With or without competitive bids, it cannot be commercially unreasonable, hence outside the scope of discretion conferred by plaintiff's deed of trust, for Wells Fargo to buy lender-placed insurance at a price that is reasonable as a matter of law. The mortgage does not limit Wells Fargo to purchasing the least expensive lender-placed insurance available. Similarly, under general contract law principles, a non-breaching party is entitled to recover costs it incurs in mitigating its damages, so long as they are reasonable. The non-breaching party is not required to seek competitive bids for mitigation measures or choose the least expensive alternative. *See Anderson v. Hannaford Bros. Co.,* 659 F.3d 151, 163-64, 166-67 (1st Cir. 2011); *Toledo Peoria & W. Ry. v. Metro Waste Sys., Inc.,* 59 F.3d 637, 641 (7th Cir.1995); *Reynolds Metals Co. v. Lampert*, 316 F.2d 272, 275 (9th Cir.1963); *In re Sec. Groups,* 116 B.R. 839, 845 (Bankr. M.D. Fla. 1990).

believes the premium was "excessive." It is also worth noting that both the commissions that QBE paid and the tracking services it performed were explicitly disclosed in QBE's rate filing with the Commissioner. *See* Ex. A pp. 111, 112,114.

Defendants anticipate that plaintiff may cite to *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) or *Kunzelmann v. Wells Fargo Bank*, N.A., 2012 WL 2003337 (S.D. Fla. June 1, 2012) in opposition. But these decisions are inapposite.

In *Abels*, the plaintiff sought to recover the *entire* premium she paid for lender-placed insurance because her lender had allegedly engaged in self-dealing by purchasing the policy from an affiliate. *See Abels*, 678 F. Supp. 2d at 1276. Hence, *Abels* did not address whether the premium plaintiff paid was "excessive" but, rather, whether she was entitled to a full refund. Hence, plaintiff's suit did not necessarily implicate the filed rate doctrine.

In *Kunzelmann*, the district court declined to dismiss plaintiff's claims based under the filed rate doctrine in a lender-placed insurance case similar to this one. *Kunzelmann*, 2012 WL 2003337, at *3. However, the court's recent decision denying class certification demonstrates why its early decision does not apply here. *See Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013). In its decision denying class certification, the court made clear that its earlier decision was based on the plaintiff's representation that the "kickbacks" and administrative costs of which he complained may not have been included in the rate that was filed with and approved by the Florida OIR. *Id.* at * 11. On the motion for class certification, the court determined that the cost of these items was included in the filed rate after all. *Id.* at *12. Hence, the court concluded, "the filed-rate doctrine is an issue that must be addressed." *Id.* *12.

Here, plaintiff explicitly asserts that the "kickbacks" to WFI and the cost of the administrative services "improperly" performed for Wells Fargo were included in the premium she paid. *See*, Compl. ¶ 28.[9]  Hence, *Kunzelmann* weighs in favor of the application of the filed rate doctrine, not against it.

The premium plaintiff paid for lender-placed insurance was pursuant to rates filed with and approved by the Mississippi Insurance Commissioner.  Hence, under federal and state law, her claims are barred by the filed rate doctrine.  They should be dismissed.

### C.     Alternatively, The Court Should Dismiss or Stay Plaintiff's Claims Under The Primary Jurisdiction Doctrine.

Closely allied with the filed rate doctrine, the primary jurisdiction doctrine also applies to plaintiff's claims.  The Court should exercise its discretion under that doctrine to require plaintiff to present her claims to the Mississippi Insurance Commissioner before seeking redress in court.

The primary jurisdiction doctrine is a judicially created doctrine.  It is properly invoked when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body

---

[9]  Plaintiff may also argue that the filed rate doctrine does not apply to her claims against Wells Fargo because QBE, and not Wells Fargo, filed the rate.  But the filed-rate doctrine is based on the principal that "any 'filed rate'–that is, one approved by the governing regulatory agency–is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).  If the rate at issue here was "per se reasonable" when Wells Fargo paid it to QBE to purchase plaintiffs lender-placed policy, it was no less reasonable when Wells Fargo sought reimbursement from plaintiff of the same amount.  Indeed, the Mississippi Supreme Court implicitly rejected this argument when it held in *American Bankers* that the filed rate doctrine barred the plaintiffs' claims against the insurance company that filed the rates in question *and* the lender that passed on the rate to the plaintiffs. *See American Bankers*, 819 So.2d at 1204; *see also Strong v. First Family Financial Services, Inc.*, 202 F.Supp.2d 536, 545 (S.D.Miss. 2002) (filed rate doctrine barred claims against insurer that issued policies and lender that procured policies for plaintiffs from the insurer); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2009) (rejecting argument that filed rate doctrine did not apply because defendant organization did not file insurance rate but, rather, passed along rate to the plaintiff).

13

for its views." *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63-64, 77 S.Ct. 161, 165 (1956). Under this doctrine, a court may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency. *See Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988).

Primary jurisdiction "is a flexible doctrine to be applied at the discretion of the district court." *See Wagner & Brown*, 837 F.2d at 201 (citing *El Paso Natural Gas Co. v. Sun Oil Co.*, 708 F.2d 1011, 1020 (5th Cir. 1983), cert. denied, 468 U.S. 1219 and *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 418 (5th Cir. 1976), cert. denied, 429 U.S. 1094). "Application of the doctrine is especially appropriate where: 'uniformity of certain types of administrative decisions is desirable, or where there is a need for the 'expert and specialized knowledge of the agencies.' " *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 919 (5th Cir.1983) (quoting, *Western Pacific*, 77 S.Ct. at 165).[10] With respect to state law claims, "[t]he [primary jurisdiction] doctrine is appropriate where regulatory authority has been delegated to state agencies." *Wild Fish Conservancy v. Salazar*, 688 F.Supp.2d 1225, 1238 (E.D. Wash. 2010).

Here, the conditions for invoking primary jurisdiction are satisfied. Plaintiffs' claims require the Court to resolve an issue—the alleged excessiveness of her lender-placed insurance premium—which has been placed within the "special competence" of the Mississippi Insurance Commissioner. *Western Pacific*, 352 U.S. at 63-64. As discussed, the Commissioner has regulatory authority over insurance rates. The Commissioner also has broad authority to

---

[10] *See also Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008); *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001).

investigate allegedly unfair insurance practices including by ordering the insurer to appear at a hearing to answer for the practices.[11]

In addition, determining whether QBE's lender-placed insurance premiums are excessive requires the specialized expertise of the Insurance Commissioner. For example, plaintiff asserts that no commission whatsoever was due to WFI because an insurance agent does not "earn" a commission unless he actively hunts for alternative coverage. *See* Compl. ¶ 26. The Commissioner has the expertise to judge whether that assumption is correct. Similarly, whether monitoring accounts for compliance with insurance requirements is properly an insurance function covered by the premium or is a loan servicing function that must be performed by Wells Fargo, Compl. ¶ 27, is an issue on which there is substantial ground for disagreement. *See Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 480-81 (Minn. App. 2002). The same is true of the so-called "back-dating" of lender-placed insurance to provide continuous insurance coverage. *See infra* at 23-24. Whether these practices are indeed unfair or "fraudulent," Compl. ¶ 37, is a matter within the unique expertise of the Commissioner. He has the power to thoroughly investigate these claims, *see* Miss. Code §§ 83-5-37, 83-5-39(1), and should be permitted the opportunity to do so before this Court passes judgment.

Furthermore, an administrative determination by the Mississippi Insurance Commissioner will ensure uniformity. A determination by the Commissioner of what costs may properly be

---

[11] The Mississippi Code grants the Insurance Commissioner broad power to investigate complaints of unfair or deceptive insurance practices. See Miss. Code §§ 83-5-33, 83-5-35, 83-5-37, 83-5-45, 83-5-79. If the Commissioner has reason to believe that an insurer is engaged in unfair competition or is guilty of unfair deceptive practices, the Commissioner may order hearings, at which it has the power to "administer oaths, examine and cross-examine witnesses, receive oral and documentary evidence, and shall have the power to subpoena witnesses, compel their attendance, and require the production of books, papers, records, correspondence, or other documents which he deems relevant to the inquiry." Miss. Code § 83-5-39(4).

accounted for in the rates will apply to the entire industry in Mississippi whereas deciding these matters in court could subject insurers to inconsistent standards.

There is no reason that the alleged "excessiveness" of the rates QBE charged to plaintiffs or the purported "unfairness" of Wells Fargo's insurance practices should be decided by this Court before the Mississippi Insurance Commissioner has had an opportunity to apply his expertise. Accordingly, even if plaintiff's claims are not barred by the filed rate doctrine, the Court should exercise its discretion under the primary jurisdiction to stay or dismiss plaintiff's claims to require plaintiff to submit her claims to the Commissioner in the first instance.

## V.
## NO RESPA CLAIM IS ALLEGED.

Plaintiff's claim under RESPA is based on a provision that was not effective at any time relevant to plaintiff's claims and would not have been applicable even if it had been effective. It should be dismissed.

Plaintiff sues under 12 U.S.C. section 2605 subsection (m), which requires that "[a]ll charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." *See* Compl. ¶¶ 73, 75, 76. Subsection (m) is part of title XIV of the Dodd–Frank Wall Street Reform and Consumer Protection Act. *See* Dodd-Frank Act, Pub. L No. 111-203 § 1400 et seq., 124 Stat 1376 (2010). Subsection (m) went into effect on January 21, 2013.[12] *See*

---

[12] Under the Act, the particular sections of Title XIV become effective on either (1) the "date on which the final regulations implementing such section, or provision, take effect," or (2) 18 months after the "designated transfer date" if no regulations implementing a section are issued by that date. *See* Dodd-Frank Act, Pub. L No. 111-203 § 1400(c)(2)(3), 124 Stat 1376 (2010). The "transfer date" is "the date that is 1 year after the date of enactment of this Act." *See id.* Pub. L No. 111-203 § 311. The Dodd-Frank Act was passed on July 21, 2010. Hence, the transfer date is July 21, 2011. Accordingly, the date that sections of title XIV take effect in the absence of the issuance of an implementing regulation is 18 months later, on January 21, 2013.

*Williams v. Wells Fargo Bank, N.A.*, No. 11–21233–CIV, 2011 WL 4368980, * (S.D.Fla. Sept. 19, 2011) (dismissing claim under subsection (m) because it was not in effect when the plaintiff's lender-placed insurance policies were issued); *Gibson v. Chase Home Fin., LLC*, No. 8:11–cv–1302–T–23TBM, 2011 WL 6319401, at *6 (M.D.Fla Dec. 16, 2011) (same). The most recently issued lender-placed insurance policy on plaintiff's property was issued in February 2012, Compl. ¶ 44, well before subsection (m) went into effect. Hence, plaintiff cannot sue under this subsection.

Even if she could, the subsection is inapplicable for two reasons. First, subsection (m) explicitly excepts any charges "subject to State regulation as the business of insurance." *See* 12 U.S.C. § 2605(m). As set forth above, the insurance premiums that plaintiff paid were required to be filed with and were approved by the Mississippi Insurance Commissioner. *See supra* at 7-8. Hence, the premiums are "subject to State regulation as the business of insurance," and are excepted from subsection (m).

Second, "force-placed insurance" is defined as "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." 12 U.S.C. 2605(k)(2). As the proposed regulations adopting Title XIV make clear, federally mandated flood insurance is excepted from this definition. *See* 2012 Real Estate Settlement Procedures Act (Regulation X) Mortgage Servicing Proposal; Proposed Rule, 77 Fed. Reg. 57,302 (Sept. 17, 2012) (to be codified at 12 C.F.R. § 1024.37) (listing "hazard insurance to

---

On September 17, 2012, the Consumer Financial Protection Bureau proposed regulations implementing title XIV of the Dodd-Fran Act, including subsection (m). *See* 2012 Real Estate Settlement Procedures Act (Regulation X) Mortgage Servicing Proposal; Proposed Rule, 77 Fed. Reg. 57,302, 57,303 (Sept. 17, 2012) (to be codified at 12 C.F.R. § 1024.37). However, the CFPB did not issue final regulations by January 21, 2013. Hence, subsection (m) went into effect on that date.

protect against flood loss obtained by a servicer as required by the Flood Disaster Protection Act of 1973" as one of the "Types of insurance not considered force-placed insurance."). Subsection (m) is inapplicable to the premiums plaintiff paid for lender-placed flood insurance for this additional reason.

## VI.
### PLAINTIFF ALLEGES NO VIABLE CLAIM UNDER STATE LAW
**A. Plaintiff's Claim For Assumpsit is Not Ripe.**

As the Mississippi Supreme Court explained in *Union Nat'l Life Ins. Co. v. Crosby*

> "[W]here a party has paid money to another as the consideration
> for a contract and the contract so made is void and unenforceable,
> so that the consideration wholly fails, the payor may recover the
> money back in an action of assumpsit for money had and
> received." *Fuqua v. Joudon*, 172 Miss. 11, 158 So. 795 (1935)
> (citing *Milam v. Paxton*, 160 Miss. 562, 570, 134 So. 171 (1931).)
> The action of assumpsit is based in equity. *Fuqua*, 158 So. at
> 795. However, an action of assumpsit lies only after
> consideration fails and the contract is void and unenforceable. *Id.*
> Because the contract herein has not been voided, [the plaintiff's]
> claim for assumpsit is not ripe.

*Id.* 870 So.2d 1175, 1181.

Plaintiff does not contend that her deed of trust has been voided by any lack of consideration, nor could she. Hence, under *Union Nat'l* plaintiff's claim for assumpsit is not ripe and must be dismissed.

Furthermore, a claim for assumpsit is based on an implied contract theory. *See Milliken & Michaels, Inc. v. Fred Nutterville Lumber Co.*, 676 So.2d 266, 270-71 (Miss. 1996) (J. Sullivan, concurring) (describing claim for assumpsit as a claim based in "quasi contract") (quoting *R.R. Tway v. Oklahoma Tax Comm'n*, 910 P.2d 972, 980 (Okla. 1995); *1704 21st Avenue, Ltd. v. City of Gulfport*, 988 So.2d 412, 416 (Miss. Ct. App. 2008) (describing claim for assumpsit as "fall[ing] under the category of implied-in-law contract causes of action"). A claim

based on a contract implied in law will not lie where there is an *actual* contract between the parties. *See Mullen v. Nationwide Mut. Ins. Co.*, No. 1:11cv351–KS–MTP, 2013 WL 228074, *7 (S.D. Miss. Jan. 18, 2013) (holding that existence of actual contract precluded implied-in-law claim for unjust enrichment) (citing *Spansel v. State Farm Fire & Cas. Co.*, 683 F.Supp.2d 444, 453 (S.D. Miss. 2010); *see also Mayer v. Angus*, 83 So.3d 444, 451 (Miss .Ct. App. 2012).[13] Accordingly, the existence of the deed of trust defeats plaintiff's implied-in-law claim for assumpsit.

**B.      Plaintiff's Claim For Unconscionability Fails Because it is Not a Claim And Because The Deed of Trust is Not Unconscionable.**

Unconscionability is "the principal that a court may refuse to enforce a contract that is unfair or oppressive because of procedural abuses during contract formation or because of overreaching contract terms…." BLACK'S LAW DICTIONARY 1663 (9th ed. 2009). Hence unconscionability is not a cause of action. It is a defense to contract enforcement. *See Miller v. First Family Fin. Servs.*, Civil Action No. 4:04cv242-P-B, 2006 WL 1875413, at *1 (N.D. Miss. July 3, 2006) (unconscionability "is not a cause of action in and of itself"); *Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 844 (S.D. Miss. 2004) ("The doctrine of unconscionability is a

_____

[13] The decisions cited in the accompanying text address claims for unjust enrichment rather than assumpsit. However, like a claim for assumpsit, a claim for unjust enrichment is based on a contract implied in law. *See Willis v. Rehab Solutions, PLLC*, 82 So.3d 583, 588 (Miss. 2012) (Unjust enrichment creates liability based on an implied contract theory where no actual contract exists) (citing *Powell v. Campbell*, 912 So.2d 978, 982 (Miss. 2005)); *Langham v. Behnen*, 39 So.3d 970, 976 (Miss. Ct. App. 2010) ("An unjust-enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to equity and good conscience.") (quoting *1704 21st Ave., Ltd. v. City of Gulfport*, 988 So.2d 412, 416 (Miss. Ct. App. 2008)) (internal quotation marks omitted). Hence, the cited decisions holding that the existence of a contract precludes an implied-in-law contract claim for unjust enrichment apply with equal force to a claim for assumpsit.

defense to the enforcement of a contract, not a private cause of action that can be brought by a party seeking damages.").[14]  Plaintiff's "claim" for unconscionability fails for this reason alone.

Even if plaintiff could sue for "unconscionability," which she cannot, her claim would nonetheless fail because the deed of trust is not unconscionable.  Recently, the District Court for the Southern District of Mississippi explained that

> Unconscionability is "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party."  [*East Ford, Inc. v. Taylor*, 826 So.2d 709, 715 (Miss. 2002).] In Mississippi, "[u]nconscionability can be procedural or substantive." [*Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds*, 14 So.3d 695, 699 (Miss. 2009).]  The burden of proving a contract's unconscionability rests with the party seeking to nullify the agreement.  [*See Entergy Mississippi, Inc. v. Burdette Gin Co.*, 726 So.2d 1202, 1207 (Miss. 1998).] An inquiry into whether a contract is unconscionable is a question of law.  [*Norwest Fin. Mississippi, Inc. v. McDonald*, 905 So.2d 1187, 1192 (Miss. 2005).]

*City of Canton v. Nissan North America, Inc.*, 870 F.Supp.2d 430, 439 (S.D. Miss. 2012).

"Substantive unconscionability is present when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement...."  *Vicksburg Partners, L.P. v. Stephens*, 911 So.2d 507, 521 (Miss. 2005) (overruled on other grounds by *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds*, 14 So.3d 695, 706 (Miss. 2009)).  As the Mississippi Supreme Court put it, "an unconscionable contract is '... one such as no man in his

---

[14]  *See* Restatement (Second) of Contracts § 208 (1979) ("If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract….); J. M. PERILLO, CORBIN ON CONTRACTS: AVOIDANCE AND REFORMATION, § 29.1 et seq. (2002) (discussing unconscionability as a grounds for avoiding enforcement of a contract); E. ALLEN FARNSWORTH, FARNSWORTH ON CONTRACTS, § 4.28, p. 580 (3d ed. 2004) ("The party asserting the *defense* of unconscionability must prove it.") (emphasis added); *see also Crockett v. Citifinancial, Inc.*, 192 F. Supp. 2d 648, 654 (N.D. Miss 2002) (Mississippi statute enabling courts to refuse to enforce unconscionable leases "is obviously designed to provide an unconscionability defense rather than a private cause of action").

senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other....' " *In re Will of Johnson*, 351 So.2d 1339, 1341 (Miss. 1977) (quoting *In Terre Haute Cooperage v. Branscome*, 35 So.2d 537 (1948)).

Plaintiff alleges that her deed of trust is substantively unconscionable because it did not disclose "kickbacks" that Wells Fargo might receive on some date after contract formation in the event that plaintiff failed to maintain required insurance coverage. Compl. ¶ 85. The primary benefit that plaintiff received from the deed of trust is that it allowed her to obtain a $74,500 loan. Plaintiff does not allege that the deed of trust's purported failure to disclose "kickbacks" somehow deprived plaintiff of this benefit, nor could she. Furthermore, a deed of trust that allows for the possibility that a lender's affiliate may receive a commission is not so oppressive that only a man "under a delusion would make" it. *In re Will of Johnson*, 351 So.2d at 1341. Hence, the deed of trust is not substantively unconscionable.

It is not procedurally unconscionable either. "Procedural unconscionability looks beyond the substantive terms which specifically define a contract and focuses on the circumstances surrounding a contract's formation." *Cmty. Care Ctr. of Vicksburg, LLC v. Mason*, 966 So.2d 220, 229(¶ 24) (Miss. Ct. App. 2007) (citation omitted). Procedural unconscionability may be demonstrated by a showing a lack of knowledge or voluntariness in entering into a contract. However, "where a contract is signed 'willingly, knowingly, and voluntarily,' it is not unconscionable." *Id.* at 439 (quoting *Community Care Center of Vicksburg, LLC v. Mason*, 966 So.2d 220, 230 (Miss. Ct. App. 2007)).

As an initial matter, the deed of trust was entered into between plaintiff and Bankers Mortgage Center, Inc., not Defendants. Compl. p. 30. Hence, if anyone can be held liable for

"procedural unconscionability" in the formation of the deed of trust, it would be Bankers, not Defendants.

In any event, plaintiff's purported claim for procedural unconscionability is limited to a stream of vague conclusions regarding her "relative bargaining power" and lack of negotiating leverage. Compl. ¶¶ 83, 84.[15] It may be true that plaintiff did not have the opportunity to negotiate the specific provisions of her deed of trust. But that alone does not mean that she did not enter into it willingly, knowingly and voluntarily or that the contract is unconscionable.

If that were the law, any number of routine commercial contracts would be unenforceable. Indeed, plaintiff's deed of trust is on a uniform instrument that government-sponsored enterprises Fannie Mae and Freddie Mac require lenders to use. Compl. p. 30.[16] If this Court were to hold that this instrument is unconscionable because the borrower cannot negotiate its terms, that ruling would effectively invalidate thousands of deeds of trust across Mississippi. Plaintiff's sparse allegations do not provide any basis for such a drastic and sweeping result.

### C. Plaintiff's Implied Duty of Good Faith and Fair Dealing Claim Fails.[17]

In procuring lender-placed insurance, Wells Fargo acted within its remedies under plaintiff's deed of trust and, therefore, did not breach the parties' contract. Plaintiff cannot allege that Wells Fargo breached any express provision of the deed of trust. Hence, she argues that the implied duty of good faith and fair dealing gives rise to wished-for legal duties, including that

---

[15] Plaintiff also complains that the contract language regarding lender-placed insurance is "inconspicuous" and "incomprehensible." Compl. ¶ 84. But she does not point to any specific language that is hidden or difficult to understand. To the contrary, a review of section 5 shows that the language regarding lender-placed insurance is conspicuous and plain. Compl. pp. 35-36.

[16] *See* http://www.freddiemac.com/uniform/unifsecurity.html.

[17] The deed of trust is governed by Mississippi law. *See* Compl. p. 40.

Wells Fargo obtain less expensive insurance based on a competitive bidding process from which Wells Fargo would reap no benefit. *See* Compl. ¶ 68. Plaintiff has not contracted for these purported duties and, hence, should not be allowed to impose them on Wells Fargo in the guise of a claim for breach of the implied covenant.

In any event, however plaintiff attempts to dress up her implied covenant claim, it is a direct attack on the alleged "excessiveness" of the premiums she paid for lender-placed insurance. Compl. ¶ 68(c). Plaintiff attempts to confuse the issue by complaining that Wells Fargo selected QBE in "bad faith" and charged plaintiff, through her lender-placed insurance, for commissions that were not really "due." Compl. ¶ 68(a), (d), (e). But none of this changes the fact that the premium plaintiff paid was filed with and approved by the Mississippi Insurance Commissioner. Hence plaintiff is entitled to no other rate and cannot sue to effectively receive a better rate than that approved by the Commissioner. *See supra* at 8-12.

The only allegation plaintiff makes in support of her implied covenant claim that arguably does not attack the rate that she paid is her vague assertion that Wells Fargo purchased lender-placed coverage that was "retroactively plac[ed]… for time periods that have already passed." Compl. ¶ 68(g). Though unclear, plaintiff apparently contends that the coverage Wells Fargo purchased was effective prior to the date Wells Fargo informed her of the coverage. She asserts that because no damage occurred to the property between the effective date of the coverage and the date Wells Fargo notified her of the coverage, it was wrongful to charge her for that period of time. Compl. ¶ 31.

As several courts have recognized, this allegation unjustifiably attacks Wells Fargo's exercise of its contractual right to ensure that the property securing its loan is continually

insured.[18]  *See*, *e.g.*, *LaCroix v. U.S. Bank, N.A.*, No. 11-3236 (DSD), 2012 WL 2357602, *5 (D.

Minn. June 20, 2012) (granting motion to dismiss and rejecting allegation that defendant had

"backdated" LPI); *Schilke v. Wachovia Mortg.*, FSB, 820 F.Supp.2d 825, 834 (N.D. Ill. 2011)

(granting motion to dismiss and rejecting argument that lender-placed insurance was backdated

because "Wachovia's contractual right was to have continuous coverage on the property.");

*Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-0548 (GCS), 2008 WL 2230696, *19

(S.D. Ohio May 28, 2008) ("[Lender] had to ensure that the property was continuously covered

in the event that a loss occurred during the lapse in insurance coverage . . . .  If [lender] had

obtained replacement insurance effective as of the date it received confirmation that the property

was no longer insured, and a loss had occurred in the interim, then there would be no coverage . .

. .").  Wells Fargo could not have breached the deed of trust or the covenant of good faith and

fair dealing by exercising that contractual right to ensure continual coverage on the property,

---

[18]  Paragraph 5 of plaintiff's deed of trust requires that she maintain hazard insurance "in
the amounts (including deductible levels) and for the periods that Lender requires," and entitles
Wells Fargo to purchase such insurance for the property if plaintiff fails to maintain it.  Compl.
p. 35.  The unmistakable purpose of these requirements is to ensure that there is continuous,
uninterrupted coverage on the property securing Wells Fargo's loan.  Furthermore, paragraph 9
states that if plaintiff fails to perform any of her obligations, such as maintaining required
insurance, Wells Fargo may "do and pay for whatever is reasonable or appropriate to protect
Lender's interest in the Property and rights under this Security Instrument."  Compl. pp. 36-37.
Similar language in the deeds of trust in *LaCroix*, *Schilke*, and *Webb* led those courts to conclude
that the deeds of trust entitled the lenders to continuous coverage and that the backdating
allegations were, therefore, baseless.  *See LaCroix*, 2012 WL 2357602, at *1 (deed of trust
required plaintiff to maintain insurance " 'in the amounts and for the periods that Lender
requires' "); *Schilke*, 820 F. Supp.2d at 829 (deed of trust required plaintiff to maintain hazard
insurance and that if plaintiff failed to do so entitled the lender to " 'do and pay for whatever it
deems reasonable or appropriate to protect [its] rights in the Property,' including 'purchasing
[the] insurance required.' ") *Webb*, 2008 WL 2230696, at *3 (deed of trust required plaintiff to
maintain hazard insurance " 'in the amounts and for the periods that Lender requires' " and
stated that if plaintiff failed to do so, " 'Lender may do and pay whatever is necessary to protect
the value of the Property and Lender's rights in the Property, including the payment of taxes,
hazard insurance….' ").

hence, Plaintiffs' breach of contract claim fails to the extent it is based on her "backdating" allegations.

## VII.
## THE NATIONAL BANK ACT PREEMPTS PLAINTIFF'S STATE LAW CLAIMS

Wells Fargo is a national bank regulated under the National Bank Act ("NBA"). 12 U.S.C. § 21 et seq. *See e.g., Bolone v. Wells Fargo Home Mortg., Inc.*, 2012 WL 882894, at *12 (E.D. Mich. 2012) ("Wells Fargo Bank, N.A., is a national banking association chartered under the National Bank Act").

"The NBA specifically authorizes federally chartered banks to engage in real estate lending," and "also provides that banks shall have power '[t]o exercise . . . all such incidental powers as shall be necessary to carry on the business of banking.'" *Id.* at 7 (citing 12 U.S.C. § 371; quoting 12 U.S.C. § 24). The Supreme Court has "'interpret[ed] grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Id.* (quoting *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 32 (1996)) (emphasis added). The power of states to regulate national banks is limited to circumstances where "doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Barnett*, 517 U.S. at 33.

In implementing the preemption provision of the NBA, the OCC has promulgated regulations setting forth areas where national banks may exercise their federally-granted powers free from state interference. See 12 C.F.R. § 34.4(a). Specifically included in this list is "the ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements or risk mitigants..." 12 C.F.R. § 34.4(a)(2). National banks may also determine the terms of credit, escrow accounts, disclosure requirements, and charges and fees. 12 C.F.R. § 34.4(a)(2), (4), (6), (9).

25

Additional guidance from the OCC makes clear that Wells Fargo was exercising its powers as a national bank in this case. The OCC's "Insurance Activities Comptroller's Handbook" discusses permissible insurance activities for a national bank.[19] The handbook states that "[a] national bank may act as a finder to bring together potential purchasers and sellers of insurance" and "may receive a fee" for doing so.[20] The handbook goes on to provide guidelines for the OCC in regulating and supervising insurance activities of national banks.

This is just what Wells Fargo did here. It obtained insurance for plaintiffs from QBE with the assistance of its insurance agent affiliate, which received a commission for this service. Plaintiffs' suit challenges the commission. *See* Compl., ¶ 5. Hence, plaintiffs' suit interferes directly with conduct that the OCC has determined falls within Wells Fargo's power as a national bank, and with the OCC's regulation and supervision of that conduct.[21]

Though plaintiff asserts claims that appear to be based on state laws of general applicability, it is not the label given to the causes of action which is controlling, but their effect or application. "What matters . . . is not whether the [] general state laws were designed to regulate" one of the enumerated areas where state limitations are preempted, "but whether their application to a specific federal banking activity conflicts with an NBA regulation or prevents or interferes with an enumerated or incidental power granted by the NBA." *Robinson v. Bank of Am., N.A.*, 2011 WL 5870541, at *4 (C.D. Cal. Oct. 19, 2011) (citing *Martinez v. Wells Fargo*

---

[19] Excerpts of the OCC's handbook are attached as Exhibit B to Defendants' concurrently filed motion to dismiss. The entire handbook is available at http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/insactfinal.pdf.

[20] *Id.*, p. 10.

[21] The OCC also issued an interpretive letter in which it opined that a bank's sale of credit-related insurance, in that case crop insurance, is "incidental to the business of banking" and, hence, falls within a national bank's incidental powers. *See* OCC Interpretative Letter #812, issued December 29, 1997, at 1-4, available at http://www.occ.gov/static/interpretations-and-precedents/jan98/int812.pdf. A copy of this letter is attached at Exhibit C to Defendants' concurrently filed motion to dismiss.

*Home Mortgage, Inc.*, 598 F.3d 549 (9th Cir. 2010). In other words, the question is whether the state law as applied would regulate the lending activities of the national banks.

Plaintiff contends that she is not challenging Wells Fargo's right under the Security Deed to force-place insurance and charge her for it. Compl. ¶¶ 33, 34. However, plaintiff does not allege that Wells Fargo Bank did anything other than pass through to her the insurance premiums it paid to QBE that were filed with and approved by the Mississippi Insurance Commissioner. Thus, plaintiff's protestations aside, her claims are an attack on Wells Fargo Bank's right to require and charge plaintiff for insurance for the collateral for her loan as well as Wells Fargo's right to specify the terms for its extension of credit and escrow accounts. *See* 12 C.F.R. § 34.4(a). Thus, her claims are preempted by the National Bank Act.

Cases applying very similar regulations under the Home Owners' Loan Act have reached the conclusion that lender placed insurance claims such as those alleged by plaintiff are preempted. For example, in analyzing a plaintiff's claim that defendant "force plac[ed] insurance on properties that already ha[d] insurance coverage," the Seventh Circuit concluded there was no indication that this practice involved either a breach of contract or misrepresentation and thus "it is apparent that prohibiting [this practice] could interfere with federal regulation of disclosure, fees, and credit terms," items which are also left to federally regulated entities under HOLA. *In re Ocwen*, 491 F.3d 738, 646 (7th Cir. 2007). The Seventh Circuit also stated that claims under a breach of contract label, if the plaintiff could not point to a specific term of a contract which had been breached, would still be preempted. *Id.* at 643-644. To avoid preemption, a plaintiff would have to allege an utter failure to honor the express terms of the mortgage loan contract itself. *Id.* Applying that analysis, other courts have stated that

supposed contract claims related to lender placed insurance are preempted by HOLA.  *Schilke v. Wachovia Mortg.*, FSB  820 F.Supp.2d 825, 832 (N.D. Ill.  2011).

This same analysis should apply to entities covered by the NBA, as the regulations under HOLA and the NBA are strikingly similar.  *Compare* 12 C.F.R. § 560.2 and 2 C.F.R. § 34.4. Indeed, the OCC has stated that this similarity "warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities."  69 Fed. Reg. 1912 n.62 (Jan. 13, 2004); *see also Larin v. Bank of America, N.A.*, 725 F. Supp. 2d 1212, 1216-1219 (N.D. Cal. 2010) (HOLA and NBA preemption analysis very similar); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-01390, 2011 WL 311376, at *4 (N.D. Cal. Jan. 28, 2011) (preemption under the NBA would apply in a similar manner to preemption under HOLA).

Because all of plaintiff's state law claims are preempted by the NBA, they should all be dismissed.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint should be dismissed in its entirety.

This the 13th day of February, 2013.

Respectfully submitted,

WELLS FARGO BANK, N.A. and
WELLS FARGO INSURANCE, INC.

By Its Attorneys,

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC

s/ Sheryl Bey
SHERYL BEY

Sheryl Bey, Esq. (MSB No. #9484)
Michael V. Bernier, Esq. (MSB #103960)
BAKER, DONELSON, BEARMAN
   CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park (39211)
Post Office Box 14167
Jackson, MS 39236
Tel: (601) 351-2400
Fax: (601) 351-2424
sbey@bakerdonelson.com
mbernier@bakerdonelson.com

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court using the ECF

system which sent notification to the following:

Peter B. Gee, Jr., Esq.
Morgan & Morgan - Memphis, LLC
One Commerce Square, 26th Floor
Memphis, TN  38103
pgee@forthepeople.com

John Yanchunis, Esq.
Morgan & Morgan, P.A.
201 N. Franklin Street
7th Floor
Tampa, FL  33602
jyanchunis@forthepeople.com

THIS the 13th day of February, 2013.

s/ Sheryl Bey
SHERYL BEY