## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

GLYNN J. SINGLETON, on behalf of
Herself and all others similarly situated**,**

    **Plaintiff,**

**v.**

WELLS FARGO BANK, N.A.;
WELLS FARGO INSURANCE, INC.;
QBE INSURANCE CORPORATION;
and STERLING NATIONAL INSURANCE
AGENCY, INC. (n/k/a QBE FIRST
INSURANCE AGENCY, INC)**,**

    **Defendants.**

**No.: 2:12-cv-216-B-A**

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' WELLS FARGO BANK, N.A.'S AND WELLS FARGO INSURANCE, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Plaintiff, Glynn J. Singleton, individually and on behalf of all others similarly situated, responds in opposition to Defendants' Wells Fargo Bank, N.A.'s and Wells Fargo Insurance, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons and on the basis of the arguments set forth below, Defendants' motion should be denied.

## INTRODUCTION

Plaintiff, Glynn J. Singleton, has brought this class action against Defendants, Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc., for their common pattern and practice of force-placing insurance upon Plaintiff and Class Members at grossly excessive rates, beyond what is necessary or required to keep such policies in force, and without justification beyond the improper motive of increasing its profits at the expense of Plaintiff and Class Members.

Defendants argue that the mortgage contract allows them unfettered discretion to deduct money from borrowers' escrow accounts for force-placed insurance, without regard to the type, necessity or excessive cost of the insurance. This position is contrary to well-founded law, which requires Defendants to exercise their discretion under the mortgage contract in good faith and to apply the terms of the contract in accordance with the borrowers' reasonable expectations. As described herein, Defendants acted capriciously, in bad faith, and in contravention of the parties' reasonable expectations when they force-placed excessively priced insurance policies upon Plaintiff and Class Members, and when they accepted and retained substantial profits in purported kickbacks and commissions derived from these force-placed insurance policies, which bear little or no relationship to the insurable risk, cost significantly more than the market rate for competitively priced insurance policies, provide considerably less insurance coverage, and are unnecessary and duplicative. These actions constitute a pattern of exploitative profiteering and self-dealing against the interest of Plaintiff and Class Members.

## LEGAL STANDARD

It is a well settled principle that in ruling on a motion to dismiss, the Court must accept all facts alleged as true, and the complaint must be construed in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-1965 (2007) (citation omitted). "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff. The complaint must allege "enough facts to state a claim to relief that is plausible on its face."" *Taylor v. Chase Auto Financial Corp.*, 850 F.Supp2d 637, 638 (N.D. Miss. 2012), citing *Twombly*, 127 S. Ct. at 1955. (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

"The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible." *Taylor* 850 F.Supp.2d at 638 (N.D. Miss. 2012). Even after the Supreme Court's decisions in *Iqbal* and *Twombly,* motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "are viewed with disfavor and are rarely granted." *Taylor*, 850 F. Supp. 2d at 638, citing *Lone Star Fund V (U.S.), LP. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir.2010); *see also Creel v. Hartford Acc. & Indem. Co.*, 2012 WL 843177, at *2 (N.D. Miss., Mar. 12, 2012).

## ARGUMENTS

### I. The Filed Rate Doctrine Does Not Apply In This Case

Defendants argue that Plaintiff's claims are barred by the filed rate doctrine because the doctrine precludes Plaintiff from challenging rates filed with state regulators. However, this assertion is incorrect as Plaintiff does not challenge the rates filed by the insurance company selected by Defendants. Instead, Plaintiff challenges the manner in which Defendants selected these insurers, the manipulation of the force-placed insurance process, the impermissible commissions and kickbacks that were included in the premiums and added to the balance of Plaintiff's mortgage loan, the cost of the bundle of administrative services that QBE is providing to Defendants, and the particular rate chosen by Defendants for unnecessary coverage. Compl. ¶28.

Courts recently addressing similar matters have found that the filed rate doctrine does not apply in circumstances such as those alleged by Plaintiff in this case. In *Abels v. JPMorgan Chase Bank, N.A.*, 678 F.Supp.2d 1273, 1277 (S.D. Fla. 2009), a case with facts much like the

present cases, the plaintiffs argued that the rate imposed by the defendant bank was excessive and that the defendant engaged in self-dealing by purchasing insurance from one of its own affiliates. The defendant bank responded by arguing the plaintiffs' claims were barred by the filed-rate doctrine. The court rejected that argument and found that "[p]laintiffs are not complaining that they were charged an excessive insurance rate, they are complaining that the defendant bank acted unlawfully when it chose this particular insurance company and this particular rate. Indeed, the Supreme Court "has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are validly filed rates.""  *Id.*  Thus, the court in *Abels* found that the filed rate doctrine did not bar plaintiffs' claims.

Likewise, in *Kunzelmann v. Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc.*, 2012 WL 2003337, at *2-3 (S.D. Fla. Jun. 4, 2012), the plaintiff argued that the defendants, Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc., *the same defendants in this case*, acted in bad faith by entering into exclusive arrangements with insurers whereby defendants would secure coverage of the consumer's property and charge the consumer for the premium it allegedly paid to the insurer's affiliates. The plaintiff further argued that the defendants acted in bad faith because the premiums for the force-placed insurance were not arrived at on a competitive basis and were significantly higher than those available to defendants in the open market. The defendants responded by arguing that plaintiff's claims were barred by the filed rate doctrine. Citing *Abels*, the court in *Kunzelmann* found that plaintiff's claims were "not barred by the filed rate doctrine because he is not challenging the rates filed by Defendants' insurers. Rather, Plaintiff challenges the manner in which Defendants select insurers, the manipulation of the force-placed insurance process, and the impermissible kickbacks that were included in the

premiums." *Id.* at *1-3. Thus, like *Abels*, the court in *Kunzelmann* found that the filed rate doctrine did not bar plaintiffs' claims.

Defendants also cite to the *Kunzelmann* case, but fail to consider the above opinion and instead jump to the court's class certification ruling in *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013). Defendants reference to this ruling is misplaced, as Defendants latch on to one line from the court's order denying class certification that the "filed-rate doctrine is an issue that must be addressed." In doing so, perhaps in an effort to avoid the reality that they have previously failed to obtain dismissal of similar claims through the filed rate doctrine, Defendants completely gloss over the *Kunzelmann* court's prior ruling that the filed rate doctrine does not warrant dismissal of this action. Instead, Defendants rely on the limited scope of the court's opinion regarding conflicts of law in the certification of a nationwide class, including that a determination of whether the filed-rate doctrine applied would require an analysis of each state's formulation of the filed-rate doctrine. Here, Plaintiff seeks only to represent a class of Mississippi consumers. Thus, the *Kunzelmann* court's opinion at the class certification stage regarding the filed rate doctrine is completely irrelevant. Indeed, while addressing the conflicts of law issue, the *Kunzelmann* court specifically pointed out that some states recognize exceptions to the filed rate doctrine. As addressed below, Mississippi is one of those states.

In *American Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1203-1204 (Miss. 2001), the defendant lenders force-placed collateral protection insurance on plaintiffs automobiles. Plaintiffs brought an action against the defendants on the basis that the lenders conducted business improperly, including backdating worthless insurance coverage for the purpose of garnering extra unearned premiums, and charging unnecessary and excessive premiums that

were not based upon any objective underwriting criteria. The defendants sought dismissal of the plaintiffs claims on the basis that they were barred by the filed rate doctrine. The court refused to apply the filed rate doctrine and found that plaintiffs could assert claims resulting from tortious conduct in the performance, rather than the rates and terms, of the contract in question. *Id.*

Similarly in *Gipson v. Fleet Mortg. Group, Inc.*, 232 F.Supp.2d 691, 707 (S.D. Miss. 2002), the defendant mortgage and insurance companies force-placed hazard insurance on plaintiff's property. Plaintiff brought an action against the defendants on the basis that the mortgage company defendant received kickbacks from the insurance company defendant in return for the purchase of force-placed homeowners insurance on the insured plaintiff's property, which costs were wrongfully passed on to plaintiff. The plaintiff claimed that although the language in the deed of trust authorized the insurer to charge force-placed insurance to plaintiff, it did not authorize the insurer to charge plaintiff for other fees, including kickbacks and commissions, associated with its acquiring hazard insurance. The court found that the filed rate doctrine did not bar plaintiff's claims, which was "not so much a challenge to the rate itself as it is to the lender's right under the lending contract to place insurance in such a manner as to cause its borrowers' payment of unnecessary fees." *Id.*

As in *Abels, Kunzelmann, American Bankers' and Gipson*, and various other district courts around the country, Plaintiff here alleges that Defendants engaged in self-dealing when they chose an insurer that would provide them with kickbacks and commissions, and impermissibly shifted the costs of those hidden, unearned kickbacks and commissions to Plaintiff

and the Class.[1]  Plaintiff thus challenges the manner in which the Defendants selected their insurers as well as the impermissible commissions and kickbacks that were included in the premiums and added to the balance of his mortgage loan.  Plaintiff also challenges the unnecessary and exorbitant coverage imposed upon him through the force-placed insurance policy.  As alleged in the complaint, from the inception of the mortgage until present, Plaintiff maintained in full force and effect flood insurance coverage on the property with a policy obtained from her Farm Bureau insurance agent which was written to cover the replacement cost of the structure, and the contents of her home.  Despite this coverage, and despite Plaintiff and her insurance agent's attempts to seek clarification of Defendants' claim that Plaintiff's insurance coverage was insufficient, Defendants acquired an additional policy of insurance on Plaintiff's property.  Compl.  ¶¶ 38-47.  Plaintiff is thus not challenging the rates that Defendants use to calculate premiums, and her claims are not barred by the filed rate doctrine.

---

[1] See *Stevens v. Citigroup, Inc.*, No. CIV.A. 00-3815, 2000 WL 1848593, at *3 (E.D. Pa. Dec.15, 2000) (denying motion to dismiss based on filed rate doctrine because plaintiff mortgagors did not challenge excessiveness of rates); *Gallo v. PHH Mortg. Corp.*, 2012 WL 6761876, at 9 (D. N.J. Dec. 31, 2012) (court found plaintiff complained of defendant mortgage company's conduct in allegedly improperly receiving various financial benefits through the force-placed insurance process, which could not be read as a direct challenge to the reasonableness of the rates and the filed rate doctrine, therefore, could not serve as a basis to dismiss plaintiff's complaint); *Ellsworth v. U.S. Bank*, N.A., 2012 WL 6176905, at *13–14 (N.D.Cal. Dec.11, 2012) (rejecting defendant bank's argument that claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, among others, were barred by filed rate doctrine because plaintiff did "not challenge the rates or the premiums he paid but instead challenge[d] the alleged kickbacks[,]" and noting that "[j]ust because the damages are based on increased costs incurred as a result of the alleged kickback scheme does not transform a challenge to conduct and practices into a challenge to the premiums"); *Stevens v. Citigroup, Inc.*, No. 00–3815, 2000 WL 1848593, at *2–3 (E.D.Pa. Dec.15, 2000) (allowing claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, among others, to proceed beyond motion to dismiss stage despite defendants' argument the filed rate doctrine barred such claims because plaintiff did not challenge the excessiveness of the insurance rate but instead challenged that manner in which the bank selected the force placed insurance).

## II.     The Primary Jurisdiction Doctrine Does Not Apply In This Case

For the same reasons as articulated above, Defendant's argument that the primary jurisdiction doctrine precludes Plaintiff's claims is wrong.  As with its claim that the filed rate doctrine applies here, Defendant's arguments in favor of the primary jurisdiction doctrine are predicated on a fundamental misreading of Plaintiff's complaint.  Plaintiff does not claim that the underlying rates charged for force placed insurance policies are themselves illegal.  Rather, Plaintiff challenges the Defendants' selection of a particular insurer, QBE, which charges a particularly high, albeit legal, rate for force placed insurance policies.   Under Plaintiff's theory, the Defendants insist on using the product sold by QBE, not because the rate charged is illegal, but because the Defendants themselves profit from their incestuous relationship with QBE. These profits take the form of kickbacks that are in part funded by the high profit margins on the insurance "sold" by QBE and by Defendants' willingness to pay inflated administrative expenses to QBE.  It does not take the expertise of an insurance regulator to root out the nature and cause of this fraudulent scheme.

The doctrine of primary jurisdiction is "a flexible doctrine to be applied at the discretion of the district court." *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988); *accord Columbia Gas Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 519 n.14 (5th Cir. 1981).  Significantly, "courts should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants where the nature of the action deems the application of the doctrine inappropriate."  *Columbia Gas*, 652 F.2d at 520 n.15 (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 419 (5th Cir. 1976)).   Before invoking the primary jurisdiction doctrine, a court "'must weigh the benefits of obtaining the agency's aid

against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties.' " *ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*, 2005 WL 1491285, at *3 (5th Cir.)(quoting *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988)). Thus, referral is only appropriate, if at all, where the resolution of disputed *factual* issues falls outside the conventional wisdom and experience of the court.

As noted above, the factual issues to be resolved in this case concern the relationship between the Defendants and whether there has been any improper self-dealing at the expense of Plaintiff and the class through improper kickbacks and other side agreements. Plaintiff does not allege that any of the rates charged by QBE are necessary illegal or that they violate any applicable Mississippi insurance regulations, for instance. Instead, Plaintiff claims that Defendants pick the insurance policy it does, despite it having a high premium, because it has a secret financial interest in doing so. Evaluating these allegations does not require agency expertise, but instead fits squarely within the ambit of this Court.

Furthermore, Mississippi law provides no administrative remedy for disputes between insureds and insurers about the scope of coverage under an insurance policy. *See Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc.*, 141 So. 2d 720, 726 (Miss. 1962) (noting that, under Mississippi law, the doctrine of exhaustion of administrative remedies does not apply where no administrative remedy is provided, or where the administrative remedy provided is not adequate). Thus, even if the Defendants were correct that the Plaintiff is somehow challenging an insurance practice instead of a deceptive business practice, the Insurance Commissioner would have no authority to adjudicate this dispute and to award monetary relief to Plaintiff and

the class. Thus, the present dispute could never be within the Insurance Commissioner's primary jurisdiction.

In the final analysis, the Court should reject Defendant's appeal to the primary jurisdiction doctrine and Defendant's motion to dismiss should be denied. *See Abels v. JPMorgan Chase Bank, N.A.*, 678 F.Supp2d 1273, 1277-1278 (S.D. Fla. 2009).

## III.    RESPA Applies to Plaintiff's Claims

Defendants argue that Plaintiff cannot proceed with her the Real Estate Settlement and Procedure Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.,* claim because the applicable provision, 12 U.S.C. section 2605(m), was not effective until January 21, 2013. As addressed below, notwithstanding RESPA's effective date, Defendants continue to charge Plaintiff for force-placed insurance. Thus, Plaintiff's RESPA claim is viable.

Section 2605(m) of RESPA provides that "[a]ll charges ... related to force-placed insurance imposed on the borrower by or through the services shall be bona fide and reasonable." As alleged in the Complaint, from the inception of the mortgage until present, Plaintiff maintained in full force and effect flood insurance coverage on the property with a policy obtained from her Farm Bureau insurance agent which was written to cover the replacement cost of the structure, and the contents of her home. Despite this coverage, and despite Plaintiff and her insurance agent's attempts to seek clarification of Defendants' claim that Plaintiff's insurance coverage was insufficient, beginning in 2009, Defendants acquired an additional policy of insurance on Plaintiff's property. Compl. ¶¶ 38-47. Subsequently, in February 2012, after receiving no explanation for Defendants imposition of a force-placed insurance policy, despite Plaintiff and her insurance agent's efforts to seek an explanation of why additional coverage was necessary, Plaintiff increased, at her own cost, the amount of insurance coverage provided by her

Farm Bureau policy. Nonetheless, Defendants remained unsatisfied and, to date, Defendants continue to charge Plaintiff for force-placed insurance. Thus, subsection (m) of RESPA applies to this claim.

Defendants next argue that subsection (m) is inapplicable to this matter for two reasons. First, Defendants argue that subsection (m) is inapplicable because it explicitly excludes any charges "subject to State regulation as the business of insurance." In doing so, Defendants again attempt to apply the filed rate doctrine. As discussed above, application of the filed-rate doctrine has been widely rejected in claims similar to the current matter. Thus, the filed rate doctrine does not apply to void application of RESPA to this matter.

Second, Defendants argue that subsection (m) in inapplicable because force-placed insurance is defined as "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage," and federally mandated flood insurance is excepted from this definition pursuant to Proposed Rule, 77 Fed. Reg. 57,302 (Sept. 17, 2012) (to be codified at 12 C.F.R § 1024.37), which will not be effective until January 10, 2014. This argument is duplicitous, especially in light of Defendants' main argument that subsection (m) of RESPA is inapplicable to this matter because it was not effective until January 21, 2013. In any event, as described in the Complaint, Plaintiff's arguments are largely predicated on the fact that the force-placed insurance is excessive and unnecessary, and beyond the necessary hazard insurance required by the Flood Disaster Protection Act of 1973. Plaintiff requires discovery to further investigate same, and dismissal based on Proposed Rule, 77 Fed. Reg. 57,302, which does not be effective until January 10, 2014, would be premature at this stage in the litigation.

For the reasons addressed above, Plaintiff's REPSA claim should not be dismissed.

## IV.    Plaintiff Sufficiently Alleges A Claim For Unconscionability

Defendants argue, without merit, that Plaintiff cannot proceed with her unconscionability claim because it is not an independent claim and even if it is, the contract is not unconscionable. Contrary to these assertions, Plaintiff has pled sufficient facts to support an unconscionability claim. While unconscionability is often raised as a defense to the enforcement of a contract, a claim for unconscionability can stand as an independent cause of action. *Abels*, 678 F.Supp.2d at 1279; *Gordon v. Chase Home Finance, LLC.* 2012 WL 750608, at *5-6 (M.D. Fla. Mar. 7, 2012),

Under Mississippi law, unconscionability is defined as:

> [A]n absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party. To show that a provision is conscionable, the party seeking to uphold the provision must show that the provision bears some reasonable relationship to the risks and needs of the business.

*Entergy Miss., Inc. v. Burdette Gin Co.,* 726 So.2d 1202, 1207 (Miss.1998). In Mississippi, a contract is unenforceable if it is either procedurally or substantively unconscionable. *Morgan Stanley Mortg. Capital Holdings, LLC v. Realty Mortg. Corp.*, 2008 WL 4279585, at *8-9 (S.D. Miss. Sept. 11, 2008). Procedural unconscionability addresses the manner in which the contract is formed, while substantive unconscionability relates to the actual terms of the contract. *Id.*

Procedural unconscionability is proven by showing either a lack of knowledge or a lack of voluntariness. As the court noted in *Morgan Stanley*, "[a] lack of knowledge is demonstrated by a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms." On the other hand, "[a] lack of

voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Id.* citing *Entergy Miss., Inc.* 726 So.2d at 1207.

Alternatively, substantive unconscionability is established by "showing the terms of an agreement are oppressive." *Morgan Stanley*, 2008 WL 4279585, at *8-9. A plaintiff may establish substantive unconscionability where there is a one-sided agreement that deprives one party of all the benefits of the agreement, or leaves that party without a remedy for another party's nonperformance or breach, or if there are abuses with particular terms of the agreement that would violate the expectations of, or cause a gross disparity between, the contracting parties. *Id.*, citing *Community Care Ctr. of Vicksburg, LLC v. Mason,* 966 So.2d 220, 230-231 (Miss.Ct.App.2007) (internal citations and quotations omitted).

In this matter, the mortgage contract is both procedurally and substantively unconscionable. Here, the specific arguments asserted by Defendants relating to unconscionability were similarly rejected by the courts in *Abels* and *Gordon*, which allowed the plaintiffs to proceed with independent claims of unconscionability and found that the mortgage contracts were both procedurally and substantively unconscionable.

In *Abels*, when finding that Plaintiffs could proceed with their unconscionability claims against the defendant, the court stated:

> Procedural unconscionability is satisfied here because of the disparity in bargaining power between Plaintiffs and Defendant. Regarding substantive unconscionability, Plaintiffs have alleged sufficient facts showing that, had they known the full extent of Defendant's permissible conduct under the contract, no reasonable person would have agreed to it. Whether or not a reasonable person would have actually agreed to it is a factual question that cannot be decided on a

motion to dismiss. Therefore, the unconscionability count should not be dismissed at this point.

*Abels,* 678 F. Supp. 2d at 1279–80 (internal citations and quotations omitted).

Similarly, in *Gordon,* in finding that the plaintiffs could proceed with their unconscionability claims against defendant, the court stated:

> As to procedural unconscionability, Plaintiffs contend that the disparity in means and bargaining power leaves Class Members obtaining loans from Chase no real option regarding the language of the loan or Chase's purchases or policies during the life of the loan. Plaintiffs further allege that Chase's actions are procedurally unconscionable because they give the borrower no opportunity to prove that their existing coverage is sufficient to cover Chase's interest in their property. Instead, borrowers are required to prove that they have whatever amount of insurance Chase demands or face force-placement in a policy that charges more than twice the market rate.
>
> As to substantive unconscionability, Plaintiffs allege Class Members are required to obtain far more insurance than they could be required to maintain under Federal law. Chase's practices under the mortgage contract are so abusive and unfair as to shock the conscience. In light of these allegations, the Court denies the Motion to Dismiss as to count seven, for unconscionability.

*Gordon,* 2012 WL 750608, at *5-6 (internal citations and quotations omitted).

In this matter, similar to *Abels* and *Gordon,* Plaintiff sufficiently alleges both procedural and substantive unconscionability. With regard to procedural unconscionability, Plaintiff alleges that although the mortgage contract indicates that the cost of force-placed insurance might exceed the cost of insurance that a borrower could obtain, it does not authorize or contemplate that Defendants will surreptitiously derive profits by charging the borrower for excessive, hidden and unnecessary costs in the form of unearned kickbacks and commissions. As alleged in the Complaint, no reasonable person would agree to the standardized force-placed mortgage provision if they were aware they were paying these costs, which are significantly higher than the actual cost of the insurance policy, or if they were aware that Defendants had an incentive to

chose an exorbitantly-priced or backdated policy to reap huge profits off of the borrowers. Compl. ¶82. Plaintiff further alleges that Plaintiff and the Class, as borrowers, were not in a position to negotiate the terms of the mortgage, and also were not in a position to know of or experience the results of Defendants' furtive business practices before obtaining their mortgages. Compl. ¶83. This is particularly true in light of the "business acumen and experience of Defendants in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the purpose and effect of the applicable terms, the allocation of the risks between he parties, and other public policy considerations." Compl. ¶84. These allegations are more than sufficient to support a claim of procedural unconscionability.

With regard to substantive unconscionability, Plaintiff appropriately alleges that the mortgage contract neither discloses nor contemplates that Defendants will derive hidden profits from the force-placed insurance through exclusive relationships, and unearned kickbacks and commissions. Compl. ¶ 85. Again, as alleged in the Complaint, had Plaintiff and the Class been aware of the full extent of Defendants alleged permissible conduct under the contract, including that they were paying significantly more for the policy because a portion of the premiums included unearned kickbacks and commissions resulting from the surreptitious relationship among Defendants, Plaintiff and the Class would not have contemplated or agreed to the terms of the contract. Compl. ¶ 85.

Although Plaintiff is only required to prove either procedural or substantive unconscionability, as alleged above, Plaintiff's allegations are more than sufficient to support a claim of both procedural and substantive unconscionability. Therefore, the unconscionability count should not be dismissed.

**V.      Plaintiff Has Sufficiently Pled A Claim For Assumpsit and Plaintiff's Claim For Assumpsit Is Not Barred By The Existence Of The Deed of Trust**

Defendants cite to *Union Nat'l Life Ins. Co. v. Crosby*, 870 So.2d 1175 (Miss. 2004) for the proposition that Plaintiff may not proceed on a claim of assumpsit because she does not contend that her deed of trust has been void for lack of consideration.  However, the findings *Crosby* are completely inapplicable in this case.  The issue in *Crosby* involved whether to transfer the case from chancery court to circuit court and the court found that the assumpsit claim was not ripe for determination of whether it should be transferred to the circuit court.  Indeed, Defendant's claim is actually favorable to Plaintiff as the finding in *Crosby* clearly indicates that Plaintiff's assumpsit claim is not ripe for dismissal and that Plaintiff requires discovery to prove that the contract is void for lack of consideration.

Indeed, "[i]n an action for money had and received, the plaintiff need only allege and show that the defendant holds money which in equity and good conscience belongs to the plaintiff." *Dorsey Mississippi Sales, Inc. v. Newell*, 168 So. 2d 645, 651-652 (Miss. 1964) citing *Pascagoula Hardwood Co. v. Chisholm*, 164 Miss. 242, 144 So. 710 (1932).  At the motion to dismiss stage, it is not necessary that Plaintiff prove that the contract is voidable for lack of consideration. *Id.*

In this matter, in support of her assumpsit claim, Plaintiff alleges that Defendants have received from Plaintiff and Class Members a benefit in the form of excessive and unreasonable force-placed insurance policies, which are the result of overcharging and overreaching and are far higher than the market rate for similar policies.  Plaintiff further alleges Defendants knew these charges were excessive and not the result of good faith practices, and that Defendants would be unjustly enriched if they are allowed to retain the benefits conferred upon them by

Plaintiff and the Class. Compl. ¶87-91. Thus, Plaintiff has adequately pled a claim for assumpsit.

Defendants further argue that the existence of the deed of trust defeats Plaintiff's assumpsit claim. In doing so, Defendants cite several cases indicating that the existence of an actual contract precludes a claim for unjust enrichment. Defendants obviously confuse the common law, equitable action of assumpsit with that of a quasi-contractual action in equity for unjust enrichment. This is a common misunderstanding. A claim for assumpsit will lie in the presence of an express contract. *Daniel v. Daniel*, 4 So. 95 (Miss. 1888). Further, in *Crosby*, cited by Defendants in support of their efforts to dismiss Plaintiff's assumpsit claim, the court indicated that an assumpsit claim lies where a party has paid money to another as consideration for a contract. *Crosby*, 870 So. 2d at 1180. Thus, a claim for assumpsit can clearly lie in the presence of an express contract.

Further, based on *Crosby*, Defendant is not correct that a claim for unjust enrichment, which it compares to Plaintiff's claim of assumpsit, cannot be maintained in the presence of an express contract. Indeed, in *Crosby*, the court explicitly stated that in order to proceed on a claim for unjust enrichment, the plaintiff must either show that the contract is void or that the defendant breached the contract. *Crosby*, 870 So. 2d at 1181. Thus, the existence of an actual contract does not preclude a claim for unjust enrichment.

Finally, "Federal Rule of Civil Procedure 8 (d) allows pleading in the alternative, even if the theories are inconsistent." *Kunzelmann*, 2012 WL 2003337, at *6. Specifically, as the court found in *Kunzelman,* "even though Plaintiff may not recover on both theories, it would be premature to dismiss Plaintiff's unjust enrichment claim at this point." *Id.*

**VI.     The Complaint States A Claim For Breach Of The Implied Covenant of Good Faith and Fair Dealing**

Defendants argue that the Court should dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because Defendants "acted within [their] remedies under plaintiff's deed of trust and, therefore, did not breach the parties' contract."   In an attempt to manufacture a good faith basis for the imposition of hidden, duplicative, costly and unnecessary force-placed insurance policies, Defendants assert that the plain and unambiguous language of the mortgage contract expressly permits it to exercise unfettered discretion to set the amount of hazard insurance it requires the borrower to carry on the property, without regard to the type or amount of coverage.

It is well established under Mississippi law, "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement."  *Wells,* 819 So.2d 1196, 1206 (Miss.2001) (quoting *Cenac v. Murray,* 609 So.2d 1257, 1272 (Miss.1992)).   "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness."  *Cenac*, 609 So.2d at1272.  A party is under a duty to abstain from any conduct which impairs the right of the other party to receive the benefits of the agreement, and also to "take some affirmative steps to cooperate in achieving these goals."  *Id.*  (citation omitted).

In this matter, Plaintiff has clearly alleged actions on behalf of Defendants that breached the duty of good faith and fair dealing by violating "standards of decency, fairness or reasonableness."  As alleged in the Complaint, Defendants breached the duty of good faith and fair dealing by using their discretion to choose an insurance policy in bad faith and in contravention of the parties reasonable expectations; by failing to seek competitive bids on the

open market and instead contracting to create "back room" deals where insurance policies are continually purchased through the same company with unearned kickbacks and commissions for the purchase of these same policies, the cost of which is passed on to Plaintiff and the Class; assessing excessive, unreasonable and unnecessary insurance premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies; and retroactively placing exorbitantly-priced policies for time periods that have already passed. Compl. ¶ 68.

In *Kunzelman*, 2012 WL 2003337, at *2-3, Wells Fargo similarly sought dismissal of the plaintiff's breach of implied covenant of good faith and fair dealing claim based on the same arguments and the court declined to dismiss that count. In doing so, the court stated that plaintiff's allegations that "[d]efendants breached their implied covenant of good faith and fair dealing by, among other things, choosing an insurance policy in bad faith and in contravention of the parties' reasonable expectations, failing to seek competitive bids for the insurance policies, and selecting insurance companies that would pay unearned kickbacks to [d]efendants..." were sufficient to sustain plaintiff's claims for breach of the implied covenant of good faith and fair dealing. Similarly, in *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346, at *3 (S.D. Fla. Oct. 14, 2011), where plaintiffs asserted a breach of implied covenant of good faith and fair dealing claim against Wells Fargo based on the same activities alleged in Plaintiff's complaint in this case, the court found that "[p]laintiffs' allegations that Wells Fargo Bank, a party to the mortgage contracts, acted in bad faith in contravention of Plaintiffs' reasonable expectations under those contracts, sufficiently allege a claim for breach of the implied covenant." *See also Abels,* 678 F.Supp2d at 1278 (finding that "as long as the implied covenant does not vary the express terms of the contract he failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing").

Further, in *Wells*, 819 So.2d at 1198, referenced above, in declining to apply the filed rate doctrine, the court found that plaintiff could proceed in a claim for breach of the implied covenant of good faith and fair dealing against the defendant lender as a result of the defendant's force-placement of unnecessary insurance coverage. Similarly, in *Gipson*, 232 F.Supp.2d at 707, discussed above, the court found that the plaintiff could proceed in a claim for breach of the implied covenant of good faith and fair dealing against the defendant lender on the basis that it charged plaintiff for more insurance than was necessary to protect the value of the property and the lender's rights in the property, and then charged those unnecessary fees to plaintiff, despite defendant's assertion of the filed rate doctrine defense.[2]

In the complaint, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by, among other things, choosing an insurance policy in bad faith and in contravention of the parties' reasonable expectations, failing to seek competitive bids and selecting an insurance company that would pay Defendants unearned kickbacks. Thus, Plaintiff has adequately pled a claim for breach of the implied covenant of good faith and fair dealing and her claim should not be dimissed.

## VII. Plaintiff's Claims Are Not Preempted By The National Bank Act

Although Defendants have twice failed in previous attempts to seek preemption of similar claims through the National Bank Act ("NBA") in *Williams* and *Kunzelmann*, Defendants nevertheless argue in this matter that Plaintiff's state law claims are preempted by the NBA. In *Williams* and *Kunzelmann*, for the reasons discussed below, the courts appropriately rejected the same arguments made by Defendants in this case, based on the same allegations in Plaintiff's Complaint in this case. *Williams v. Wells Fargo*, 2011 WL 4901346, at *9; *Kunzelmann*, 2012 WL 2003337, at * 4.

---

[2] Both *Wells* and *Gibson* involved findings at the summary judgment stage.

As in *Williams and Kunzelmann*, in this matter, Wells Fargo contends that Plaintiff's state law claims conflict with 12 C.F.R. § 34.4, which provides that "[e]xcept where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans .... without regard to state law limitations concerning ... terms of credit, ... rates of interest on loans" and other matters." However, 12 C.F.R. § 34.4 also provides that "[s]tate laws on ... [contracts and torts] are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers." *Id.*

Thus, in both *Williams* and *Kunzelmann*, the courts found that the scope of the NBA is significantly more narrow than Defendants assert here, and that the NBA does not preempt Plaintiff's state law claims of general applicability, such as Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, assumpsit or unconscionability, which have been found not to be preempted. *Williams*, 2011 WL 4901346, at *8, citing *In re Checking I,* 694 F.Supp.2d at 1311–12; *Baldanzi v. WFC Holdings Corp.,* No. 07 Civ. 9551(LTS)(GWG), 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("In contrast to findings of federal preemption in cases involving specific state regulations that conflict with the NBA, causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted."); *Cuomo v. Clearing House Ass'n, L.L.C.,* 129 S.Ct. 2710 (2009). "The general rule is that states may regulate the activities of national banks so long as they do not prevent or significantly interfere with the exercise of the banks' authority." *Williams*, 2011 WL 4901346, at 8, *citing Barnett Bank of Marion Cnty., N.A. v. Nelson,* 116 S.Ct. 1103 (1996).

In sum, the *Williams* and *Kunzelmann* courts found that at most, the plaintiff's state law claims only incidentally affected the exercise of a bank's powers and therefore were not preempted by the NBA. *Id.* The courts further found that the state laws "do not seek to prevent or restrict a bank's ability to engage in insurance activities. They are not directed at the activities of national banks in any way; instead, they merely incidentally affect the exercise of national banks' insurance activities." *Id.*

In this case, similar to *Kunzelmann* and *Williams*, Plaintiff "does *not* seek to have the defendants select different insurers or impose a system whereby Defendants would invite bids from other insurers. The relief that Plaintiff seeks in both cases is recovery of the 'inflated' portions of the premiums, which Wells Fargo charged Plaintiff and the putative class in bad faith." *Kunzelmann*, 2012 WL 2003337, at * 5. In particular, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is a contract law claim that is not directed at national banks or their activity, nor does it mandate what banks are able to do. Similarly, Plaintiff's assumpsit and unconscionability claims are state laws of general application that do not vitiate the purpose of the NBA. Rather than focusing on the force-placed insurance process, including Defendant's ability to charge fees or premiums or to collect commissions from force-placing the insurance, Plaintiff's claims focus on the manner in which Defendants manipulated the force-placed insurance process so as to obtain unearned commissions and kickbacks and pass those hidden, unnecessary and excessive charges on to Plaintiff and the Class. Thus, the claims do not seek to impose requirements on Defendants' conduct. They simply seek return of funds that were unjustly paid to Defendants. *Id.*

For these reasons, Plaintiff's claims only incidentally affect Defendants' real estate lending powers and thus are not preempted by the NBA.

## **CONCLUSION**

For the reasons and on the basis of the arguments set forth above, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

**MORGAN & MORGAN - MEMPHIS, LLC**

By:    *s/ Peter B. Gee, Jr.*

**Peter B. Gee, Jr.** (MS No. 100589)
2600 One Commerce Square
Memphis, Tennessee 38103
Tel: (901) 523-1222
Fax: (901) 523-1999
Email: pgee@forthepeople.com

John Yanchunis, Esquire (FBN: 0324681)
MORGAN & MORGAN, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505 Telephone
(813) 222-4736 Facsimile
jyanchunis@forthepeople.com
*Pending Pro Hac Vice Admission*

## CERTIFICATE OF SERVICE

I hereby certify that on **March 18, 2013**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> **Sheryl Bey, Esq.** (sbey@bakerdonelson.com)
> **Michael V. Bernier, Esq.** (mbernier@bakerdonelson.com)
> BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
> 4268 I-55 North
> Meadowbrook Office Park (39211)
> Post Office Box 14167
> Jackson, MS 39236
> *Attorneys for Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc.*

I further certify that as of this filing there are no non-CM/ECF participants, and no service by mail is required.

By:     *s/ Peter B. Gee, Jr.*

**Peter B. Gee, Jr.** (MS No. 100589)